Green, J.
delivered the opinion of the court.
The plaintiff and defendant entered into the following contract:
“Know all men by these presents, that I, Creed H. Hally, of Fayetté'county, Tennessee, have this day agreed and do bind myself to take of John Trigg the whole of his present growing crop of cotton in his farm on Red river, to consist of four hundred bales, more or less; said cotton to be delivered at said Trigg’s cotton shed in good order, to be put in Kentucky or India bagging, well and sufficiently tied with rope; said cotton to be handled well, and delivered to the said Hally on the 1st day of November, whatever is then ready; also, on the first day of January whatever is then ready, and the balance tobe delivered in one lot whenever it is all ready: said cotton to be ensured and shipped at the risk of the said Hally, to A-nthony H. Brown *496 or any other responsible house in New Orleans; and said Hally or his agent is to give, on the delivery of the said cotton as above specified, (at Trigg’s cotton shed,) his bill payable at New Orleans, thirty days after the receipt of said shipment at New Orleans, at eight dollars and fifty cents per hundred pounds, payable in New Orleans funds. Dated at Memphis, Tennessee, the twenty-second day of May, one thousand eight hundred and forty-one. For the faithful performance of the above obligation, we mutually bind ourselves in the penal bond of ten thousand dollars, to be well and truly paid, should either party fail to comply with the above contract.
C. P. Hally,
John Thigh.
Witness, W. I. Woods.”
The defendant Hally appointed R. E. Titus his agent, to go to Trigg’s plantation on Red river, to receive and ship the cotton for him. Titus received the whole crop, amounting to two hundred and ten bales, by the first of January, 1842, and shipped the same to New Orleans, on account of his principal. .He also drew a bill for Hally, as his agent, on Lockhart, Fearne & Donnegan, of New Orleans, in favor of Trigg, for 8847 dollars and 65 cents, the price of the cotton at $8 50 per hundred pounds, the rate agreed on by the contract.
By subsequent agreement between Hally and Trigg, the cotton was shipped to Lockhart, Fearne & Donnegan, instead of Anthony H. Brown, as stipulated in the contract: and it was also agreed, that the cotton in New Orleans should be postponed, and that the bill in favor of Trigg should be held up. The cotton was sold in June for 6 and 5-8 cents per pound — making of net proceeds only 5381 dollars and 6 cents, which sum was credited on the bill in favor of Trigg. This suit is brought to recover the balance due on the bill; and the declaration contains several counts, presenting the plaintiff’s claim upon the bill and upon the original contract of -sale. The defendant insisted that the cotton was stained with dirt, — injured by the weather before it was gathered, and altogether an inferior article to that which he had a right to demand under the contract. The plaintiff contended, that the cotton was in good order, and *497 well handled, and that if its quality was inferior, it was the result of the rainy season, that rendered it impossible to put it up in better condition.
There was much evidence before the jury upon these points, and under the charge of the court, .a yerdict was rendered for the defendant.
The plaintiff excepted to the charge of the Judge, and appealed to this court. - - .
Before we examine the charge of the court, it will be proper to state the contract of the parties, as it must be construed and understood. . ' .
There is no doubt, but that if the contract had been made abstractly for 210 bales of cotton “in good order and handled well,” this stipulation would have bound the party to have delivered an article, not only well ginned and baled, dry and in good condition, but of a fair quality, But -in construing this contract, we must not confine ourselves to the stipulations, that it must be in good order and handled well. The whole contract must be considered.
In the first place, it is an agreement for the purchase of the crop then growing on a specified, plantation. In the next place, it is understood that the crop is to be gathered during the season ranging from August to February;' for it is stipulated, that the defendant Is to receive whatever, may be ready the first day of November, and whatever may be ready on the first day of January, and the balance in one lot whenever it may be ready.
The stipulations, therefore, that ■ the cotton is to be in good order and well handled, have regard to the whole of this specified crop, as it might with proper care and,' diligence be gathered during the season, handled well in picking out, ginning and baling, and then preserved from the weather so as to be delivered in good order.
It was not in the contemplation of. the parties, that Trigg should engage a large extra force, so that his cotton should be all gathered early in the season, and thereby escape entirely the effect of the autumnal and winter rains, and therefore it could not have been in their contemplation, that the whole of the cotton would be free from stain and dirt: such a state of things can be *498 predicated of no large planter’s entire crop any season; and as they were contracting in relation to an entire crop of a given season, they must be understood as having in view these known facts, that part of the crop would be of the first quality, part only fair, and part inferior. What would be the proportion of each quality they could not foresee; which would depend upon the perfection of the crop, in its growth and maturity; much upon the character of the weather during the coming fall and winter, and much upon the manner in which it should be handled. As to the two former causes that might affect it, the purchaser took, the risk: but as to the last, depending on human agency, he takes a stipulation from the vendor. We think, therefore, if it had been shown that Trigg handled the cotton well, that is, if he was careful in picking it out, as free from leaf and dirt as the nature of the season would enable him to get it, and it was kept dry and nicely handled in ginning and baling, and was then delivered in good order, the defendant would be bound for the price agreed on. But if he failed in any of these particulars, and in consequence of such failure the lot of cotton was of inferior quality, the defendant would be entitled to a diminution of the price, to the extent of the loss experienced by reason of such negligence of the plaintiff.
The only question now is, did the honorable court below leave the case to the jury with a proper exposition of the contract; and we think he did not. He told the jury, to be sure, that if the plaintiff had complied with his contract, he had a right to recover; but he said, “If you should be of opinion that the cotton was not in the order and handled as agreed by the parties, the defendant would not be bound to take it, although the rains had made it impracticable for the plaintiff to put it in better order, or handle it better than it was. The defendant was entitled to have the cotton in the order and handled as contracted for.”
His honor also refused upon the application of the plaintiff to charge, “that if the plaintiff had put up his cotton in as good order and handled it as well as human agency could do, owing to the season, it would be a compliance with his contract.” At the request of the defendant, his honor charged, “that the law *499 as applicable to this case is, that where a party by his own contract engages to do an act, it is deemed to be his own fault and folly that he did not thereby expressly provide against contingencies and exempt himself from responsibility in certain events, and in such case, therefore, that is,-in the instance of an absolute and general contract, the performance is not excused b}' an inevitable accident, or • other contingency, although not foreseen by or within the control of the party,” In these several extracts from the charge of the court, we think his honor was manifestly laboring under a misapprehension of the meaning and true construction of the contract before him.
He evidently regarded the stipulation-, that the cotton should be in good order and well handled to amount to an absolute engagement that it should be of fair quality and free from stain. In this we have seen he failed to give due effect to all the terms of the contract. For unquestionably, the last picking might have been as well handled as the first; and as the parties were contracting about the entire crop then growing, to be gathered through various seasons of the year, we are to suppose that they so understood the meaning of the words.
The extract last quoted from the charge, although true as an abstract principle, yet has no application to this case; and in giving it such application, the jury were misled and the court erred.
The other two extracts from the charge evidently show a misconception of the meaning of the contract, and were calculated to mislead the jury.
The court failed to place before the jury the true question between the parties, that is, did Trigg handle the cotton well, in picking, ginning and baling, and thereby make it as good an article as the utmost care and attention would have enabled him to do? , If the season was deficient, his attention and diligence should have been redoubled.
Reverse the judgment and remand the case.